

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed November 22, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 13 |
| GERALD JOSEPH DAVIS & | § | |
| CAROL ANN DAVIS, | § | CASE NO. 10-47600 (DML) |
| | § | |
| DEBTORS. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is *Debtors' Chapter 13 Plan* (the "Plan"), docket no. 2, filed by Gerald Joseph Davis and Carol Ann Davis ("Debtors") and the *Trustee's Objection to Confirmation of Plan* (the "Objection") filed by chapter 13 trustee Tim Truman (the "Trustee"), docket no. 15. A hearing was held on confirmation of the Plan and the Objection on June 16, 2011, at which counsel for Debtors and the Trustee presented oral argument. At the hearing, the court asked the parties to submit additional briefs on the issues. The parties did so and the court now considers

1

*Debtors' Brief in Support of Debtors' Claim for Special Circumstances Allowing Additional Expenses and/or Adjustment to Income Under Section 707(b)(2)(B)* ("Debtors' Brief"), docket no. 50, and the *Brief by Trustee in Support of Trustee's Objection to Confirmation* (the "Trustee's Brief"), docket no. 51.

Confirmation of the Plan and the Objection are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(L). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

## I.  BACKGROUND

Debtors filed a voluntary petition for relief under chapter 13 on November 29, 2010. The Plan was filed the same day. Debtors' Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form 22C) listed a number of deductions for "special circumstances" on line 57 (the "Deductions") that Debtors propose to include in the calculation of disposable income. Under the Plan, the unsecured creditor's pool (the "UCP") is calculated as $18,456.60, based on a 60-month applicable commitment period. Debtors' unsecured claims listed in their schedules total $160,066.13.

The Trustee filed the Objection on January 25, 2012. The Trustee argued at the hearing and in the Trustee's Brief that the Deductions were improper because Debtors have not met the requirements to take deductions for special circumstances under 11 U.S.C. § 707(b)(2)(B).[1] The Trustee calculated that without the Deductions, and with the addition of add-backs of $1465.00, Debtors' income should provide for a UCP of $106,356.60. The Trustee argued that the Plan should not be confirmed because Debtors could not take the Deductions, and the Plan therefore failed to allocate all available disposable income to unsecured creditors.

---

[1] All sections quoted refer to 11 U.S.C. §§ 101 et seq., the "Code", unless otherwise noted.

2

Debtors' Brief subsequently amended the Deductions as follows:

A. Business lunches - $50.00

B. Dry cleaning - $50.00

C. Electricity/shop - $50.00

D. Home warranty - $60.00

E. Pool maintenance - $50.00

F. Savings - $300.00

G. Septic service - $140.00

H. Trash - $40.00

I. Yard maintenance - $100.00

The court must determine if the Deductions are allowable under the Code.

## II.    DISCUSSION

### A.  The applicable law.

Under section 1325(b)(2), a debtor's "disposable income" is calculated by taking his or her "current monthly income"[2], less certain exclusions, and deducting "amounts reasonably necessary to be expended" for maintenance and support of the debtor. For an above-median income debtor, as is the case here, section 1325(b)(3) requires determination of "amounts reasonably necessary to be expended" by looking to the provisions of sections 707(b)(2)(A) and (B).

Section 707(b)(2) creates a mechanism to calculate an above-median debtor's disposable income in a chapter 7 case. If the debtor's disposable income is enough to either pay at least $11,725.00 or 25% of non-priority unsecured claims over 60 months, abuse is presumed and the

---

[2] A debtor's "current monthly income" is a "debtor's average monthly income for the six calendar months prior to the filing of the bankruptcy case." *See* 11 U.S.C. § 101(10A).

debtor may not proceed in chapter 7. The court may dismiss the chapter 7 case, or the debtor may seek relief under chapter 13.

Section 707(b)(2)(A) provides standards for which expenditures may be deducted to calculate a debtor's disposable income to determine whether the presumption of abuse arises. In the chapter 13 context, the standards for expenditures in section 707(b)(2)(A) are used to calculate a debtor's disposable income available to fund a plan to pay his or her unsecured creditors. An expenditure is a permissible deduction in determining chapter 13 disposable income to the same extent it is permissible in determining whether a presumption of abuse arises in chapter 7.

Section 707(b)(2)(B) allows a debtor to rebut the presumption of abuse in chapter 7 (or to take an additional deduction when calculating disposable income in chapter 13) by demonstrating that that the debtor has special circumstances that "justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."

In the present case, the court must first determine if the Deductions are allowable under section 707(b)(2)(A), and, if not, consider whether there are special circumstances which permit Debtors to deduct the expenses from their disposable income under 707(b)(2)(B).

### B. Application of 707(b)(2)(A).

The starting point for determining which expenditures Debtors may deduct from their current monthly income is section 707(b)(2)(A). Section 707(b)(2)(A)(ii)(I) provides in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent….In addition, if it is

4

>reasonably necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing up of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

The rest of section 707(b)(2)(A)(ii) provides for certain additional deductions based on the actual expenses of the debtor, discussed below.

A debtor's allowable expenses break down into four general categories: 1) those that are provided for in the IRS's National Standards, including food, clothing, household supplies and personal care; 2) those that are provided for in the IRS's local standards, primarily housing and transportation costs; 3) actual expenses for the categories of items characterized by the IRS as "Other Necessary Expenses"; 4) actual expenses, as provided for explicitly in other parts of section 707(b)(2)(A)(ii). The court must determine if the Deductions are allowable under any of these categories. The court will look to the Internal Revenue Manual for guidance respecting the application and meaning of the National and Local Standards. *See Ransom v. FIA Card Servs., N.A.*, __ U.S. __, 131 S.Ct. 716, 726, 178 L.Ed.2d 603 (2011)(stating that although the statute does not incorporate the IRS's guidelines, "courts may consult this material in interpreting the National and Local Standards", and noting that the agency's interpretation may be "insightful" and "persuasive").

Debtors have claimed the applicable deductions provided for under the "National Standards for Food Clothing and Other Items" based on their family size of four persons. Several of the Deductions fall into the category of expenses covered by the National Standards. The expenses for business lunches, dry cleaning and yard maintenance are already provided for in the applicable monthly expense amount specified in the National Standards. *See* Internal Revenue Manual, Financial Analysis Handbook, National Standards, § 5.15.1.8.1.A-E. While the court does not doubt that Debtors actually incur the expenses claimed, the court may not

5

adjust upward the amount specified in the National Standards to account for Debtors' actual expenses in these categories.[3] The court may not allow these additional expenses to be deducted under section 707(b)(2)(A)(ii)(I) because Debtors have already deducted the amounts provided for these expenses in the National Standards and they may not take additional deductions for the same expenses.

But section 707(b)(2)(A)(ii)(I) allows a debtor to include an additional allowance of up to 5 percent of the applicable amount for food and clothing expenses if it is "reasonably necessary". Debtors' business lunches are obligatory, uncompensated and a requirement of Debtors' employments. Trial Record ("TR") at 6. The court finds that the additional allowance of 5 percent for Debtors' business lunches is reasonably necessary and should be allowed. Since Debtors listed their monthly food expense as $752.00, they may by reason of business lunches deduct an additional $37.60.[4]

Debtors have also claimed the applicable deductions provided for under the Local Standards for Housing and Utilities. Several of the Deductions fall into the category of expenses covered by the Local Standards. Specifically, Debtors seek to deduct additional expenses for electricity for the shop building, a home warranty, trash disposal and septic service. But each of these expenses is clearly included in the applicable Local Standards. *See* Internal Revenue Manual, Financial Analysis Handbook, Local Standards, § 5.15.1.9.1.A. The court may not adjust the amounts of these expenses upward to account for Debtors' actual expenses in these

---

[3] As Justice Kagan noted in the Supreme Court's recent decision in *Ransom*, the amounts provided for in the National and Local Guidelines act as a cap on the allowance for those particular expenses, in contrast to the "Other Necessary Expenses" categories for which Congress provided a debtor could deduct his or her actual expenses. *Ransom*, 131 S.Ct. at 727. The Supreme Court declined to reach the issue of whether it was appropriate to adjust the amounts downward, as it was not properly before the Court. *Id.*

[4] *See* Bankruptcy Allowable Living Expenses – National Standards, U.S. Trustee Program, *available at* http://www.justice.gov/ust/eo/bapcpa/20101101/bci_data/national_expense_standards.htm, (last visited Oct. 13, 2011).

categories. Since Debtors have already deducted the amounts provided for these expenses under the Local Standards, they may not take additional deductions for the same expenses under 707(b)(2)(A)(ii)(I).

But section 707(b)(2)(A)(ii)(V) provides that a debtor may include an allowance for housing and utilities for actual expenses for home energy costs if the debtor provides documentation of the expenses and if they are "reasonable and necessary". The court finds that Debtors may deduct the cost of the electricity for the shop because it is reasonable and necessary to protect against vandalism and theft of Debtors' automobiles and other property, given the rural location of Debtors' home. TR at 15-16.[5] Thus Debtors may deduct the additional $50.00 for electricity in the shop building.

Though Debtors have not claimed additional deductions as "Other Necessary Expenses", the court will analyze whether the Deductions are allowable under this category. Section 707(b)(2)(A)(ii)(I) provides that a debtor may deduct his or her actual expenses "for the categories specified as Other Necessary Expenses". The Internal Revenue Manual contains a table of expenses that may be claimed as "Other Expenses", but does not state whether the list is inclusive or exclusive. *See* Internal Revenue Manual, Financial Analysis Handbook, Other Expenses, § 5.15.1.10.[6] But, given that the statute provides that a debtor may deduct "Other Necessary Expenses" for the "*categories specified*", another judge of this court has interpreted that to mean that only expenses falling within the description listed in the table may be deducted. (Emphasis added.) *See In re Lara*, 347 B.R. 198, 204 (Bankr. N.D. Tex. 2006). None of the

---

[5] The court also finds that the electricity for the shop building relates to "home energy costs", notwithstanding the fact that the shop building is detached from Debtors' house.

[6] Though the language of the statute ("Other Necessary Expenses") and the language in the Internal Revenue Manual ("Other Expenses") do not match up perfectly, the court assumes the language covers the same expenses.

Deductions fall into the categories listed under the table "Other Expenses" in the Internal Revenue Manual. Hence, none of the Deductions qualify as "Other Necessary Expenses".

The remainder of the Deductions – the expenses for pool maintenance and savings – do not fall into any of the above categories and so are not allowable under section 707(b)(2)(A). These Deductions, though not allowable under section 707(b)(2)(A), must yet be considered under section 707(b)(2)(B).

### C. Application of 707(b)(2)(B).

The court must consider whether Debtors have demonstrated special circumstances which would allow them to take the Deductions under section 707(b)(2)(B)(i). Section 707(b)(2)(B)(i) provides:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

Section 707(b)(2)(B)(ii)(I) and (II) further provide that the debtor shall: 1) provide documentation for the expense, 2) give a "detailed explanation of the special circumstances that make such adjustments to income necessary and reasonable" and 3) attest to the accuracy of the information under oath.

Although courts generally agree that whether special circumstances exist should be decided on a case-by-case basis, *see, e.g.*, *In re Champagne*, 389 B.R. 191, 200 (Bankr. D. Kan. 2008), courts are divided over what constitutes a special circumstance. *See In re Hammock*, 436 B.R. 343, 354 (Bankr. E.D.N.C. 2010). Some courts have interpreted special circumstances narrowly, often relying upon the "plain meaning" of the word "special" and finding that there is a significant burden to overcome. *See In re Siler*, 426 B.R. 167, 172 (Bankr. W.D.N.C.

2010)(collecting cases); *see also In re Haar*, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007)(stating that Congress intended "to set this bar extremely high, placing it effectively off limits to most debtors"). Some courts viewing the exception narrowly have inferred that the special circumstance should be of the same degree or seriousness of the two examples listed in the statute – that is, a call to military duty or serious medical condition – and compare those circumstances with the debtor's to determine whether the deduction is allowable. *See, e.g., In re Delunas*, 2007 WL 737763, at *2 (Bankr. E.D. Mo. Mar. 6, 2007)(finding that circumstances should "rise to the same level" as those mentioned in the statute and noting that the examples contemplate "circumstances beyond a debtor's reasonable control") *citing In re Tuss*, 360 B.R. 684, 701 (Bankr. D. Mont. 2007); *see also In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006)).

Other courts have adopted a broader approach to the interpretation of special circumstances and found that it does not necessarily mean the circumstances need be extraordinary, unanticipated or outside of the control of the debtor. *See In re Graham*, 363 B.R. 844, 850 (Bankr. S.D. Ohio 2007); *In re Robinette*, 2007 WL 2955960, at *4. (Bankr. D.N.M. Oct. 2, 2007); *In re Turner*, 376 B.R. 370, 378 (Bankr. D.N.H. 2007); *See also In re Fonash*, 401 B.R. 143, 146 (Bankr. M.D. Pa. 2008) (finding that the "burden to establish special circumstances was not set particularly high, making the presumption truly rebuttable. The standard…is special, not extraordinary"). Courts following this approach also conclude that the circumstances need not be of the same degree as the examples mentioned in the statute and have found that the procedural requirements of section 707(b)(2)(B) are of primary importance. *See, e.g., In re Littman*, 370 B.R. 820, 831 (Bankr. D. Idaho 2007)(noting the limited utility of using the examples as archetypal as they do not share a common, understandable trait and emphasizing

that "compliance with the requirements to itemize, document, verify, establish reasonableness and necessity, and prove 'no reasonable alternative' [is] key.")

The court agrees that the determination whether a particular circumstance is special should be made on a case-by-case basis. As to what constitutes a special circumstance, the court recognizes the need to give meaning to the term "special". However, the court also finds that the 707(b)(2)(B) leaves discretion with the court to account for differences between individual debtors. The focus must be on whether the debtor is, of necessity, in a different situation than the typical debtor addressed by the IRS guidelines.[7] As such discretion is not otherwise provided for in the statute, 707(b)(2)(B) represents an important tool for the court to insure that a chapter 13 plan accurately accounts for a debtor's actual ability to pay. The court therefore rejects the reading of those courts which have followed an unnecessarily rigid definition of the term "special", such as by requiring a circumstance to be of equal gravity as those mentioned in the statute.

Instead, the court considers certain factors relevant in determining whether a circumstance is special within the meaning of 707(b)(2)(B). First, the court may examine what the IRS would have considered a normal or average expense in a given category when calculating the National or Local Standard. Second, the court may look to a debtor's circumstances to determine if they differ from that of a hypothetical typical person the IRS would consider when formulating the standard. Third, the court may consider whether a debtor has a reasonable alternative to incurring the expense or could feasibly lower the amount of the expense.

---

[7] This is consistent with the meaning commonly given "special". *See* Oxford Dictionaries (Nov. 2011)(defining special as "better, greater or otherwise different from what is usual")(definition 1) *available at* http://english.oxforddictionaries.com, (last visited Nov. 22, 2011).

Lastly, the court may view a debtor's situation holistically when deciding whether a given expense is reasonable; it is quite possible that an expense that looks facially unreasonable would be reasonable when viewed in light of other facts.  By way of example, in the case at hand, Debtors' rural location and choice of home impose higher costs that may be viewed as excessive; but the alternative of selling the property and moving somewhere less expensive might be significantly more costly than simply staying put and incurring the expenses.

Additionally, following the language of section 707(b)(2)(B), the debtor must also properly document the deduction, prove there is no reasonable alternative and provide an explanation of the circumstances making the deduction necessary and reasonable.

Debtors have provided documentation of their expenses and testified to them under oath in court.  The Trustee noted that he does not dispute the fact that Debtors have fulfilled the procedural requirements of 707(b)(2)(B). Trustee's Brief at 9; TR at 3.  Accordingly, the court must now determine if the Deductions relate to special circumstances of Debtors given the considerations detailed above.  The court will also determine if Debtors have proven (1) that the expense is necessary and reasonable and (2) that there is no reasonable alternative to the expense. The court considers each of the Deductions in turn.

The $50.00 dry cleaning expense does not relate to a special circumstance.  Debtors argued at the hearing that they were required by their respective jobs to dry clean the clothing they wear to work each day and that it would be unacceptable to wear clothing that had not been dry cleaned because they are professionals. TR at 14.  The National Standards clearly indicate that expenses for dry cleaning are included in the deduction for "Food, Clothing and Other Items". Internal Revenue Manual, Financial Analysis Handbook, National Standards, § 5.15.1.8.1.A-E.  Though Debtors maintain their expenses are higher because of their

employment, the court finds that Debtors' situation does not differ in any material way from a hypothetical person the IRS would have considered in formulating the standard. The IRS clearly considered that certain individuals would have dry cleaning expenses because of their employment, and provided for that in the National Standards. The dry cleaning expense may not be deducted.

The $60.00 expense for maintaining the home warranty does not relate to a special circumstance. Debtors asserted at the hearing that if the warranty is not maintained, they might incur greater costs in repairs to their home and appliances. TR at 16-17. Debtors indicated that they would prefer to pay the costs of repairs up front, which is more economical. TR at 17. While that preference is understandable, it does not meet Debtors' burden of proving that there is no reasonable alternative to the expense, nor does the expense relate to a special circumstance. Debtors may pay for the expenses after they are incurred. Debtors may not deduct the $60.00 expense to maintain the home warranty.

The $50.00 expense to maintain Debtors' pool relates to a special circumstance. Debtors testified that the expense is to buy chemicals with which they would clean the pool themselves. TR at 23. Debtors argue that it is necessary to maintain the pool so that it does not become a safety and sanitation hazard. TR at 25. Debtors' Brief also argues that if the pool is not maintained, the value of the property, which secures Debtors' home mortgage loan from Bank of America Home Loans Servicing ("Bank of America"), would decline. The Trustee argues that Debtors should empty the pool and cover it.

Pool maintenance is not provided for in the Local Standards for Housing and Utilities. It is arguably a luxury expense that relatively few incur and therefore it would not be included in the IRS guidelines. But if the pool is not maintained it could become a safety and sanitation

hazard. Emptying the pool and covering it is not a reasonable alternative. Even if the pool did not remain a health and safety hazard, it would likely lead to a decline in the value of Bank of America's collateral. Likewise, removing the pool would not only cause the value of the home to decline, but would also create an additional expense that would likely more than offset any savings. Though the expense appears facially unreasonable, this is a situation where the alternatives are less reasonable than the expense. Debtors have proven the expense relates to special circumstances. Debtors have proven the expense is necessary and reasonable and that there is no reasonable alternative. Debtors may deduct the $50.00 expense for pool maintenance.

The $300.00 expense for savings relates, at least in part, to special circumstances of Debtors. The set-aside in Debtors' schedules is to cover future expenses incurred for treatment of Ms. Davis's malignant melanoma and to provide adequate funds to cover business travel expenses which Ms. Davis has to pay up front, for which she is reimbursed later. Money spent on treatment of Ms. Davis's melanoma clearly relates to a special circumstance of Debtors; the expense fits even within the narrowest construction of section 707(b)(2)(B) because it relates to a serious illness. Debtors should calculate the amount of the set-aside to provide for medical expenses, which amount will be allowed.

The savings set-aside for Ms. Davis's business travel expenses relates in part to a special circumstance. The type of expense Debtors wish to deduct would have been difficult for the IRS to contemplate when calculating the National and Local Standards. It reflects a temporary cash-flow need of Debtors to cover Ms. Davis's business expenses until she is reimbursed. It is a situation that is distinct from that of a typical debtor. Ms. Davis does not have any real alternative but to incur the expense; she cannot refuse to go on a business trip that is required by her company. Given the unique nature of Debtors' situation, the court finds that the expense

relates to a special circumstance. However, since Ms. Davis is ultimately reimbursed for the expense, the reimbursement is properly includible in Debtors' income. Accordingly, Ms. Davis must account for any reimbursed sums to the Trustee as she is reimbursed. At such intervals as the parties find convenient, Debtors shall then pay to the Trustee the reimbursed amounts.

The $140.00 expense for maintenance of the septic tank relates to a special circumstance. Debtors live in a rural location, where there is no sewer service. TR at 27. Debtors must pay for a quarterly inspection of their tank and for chemicals to maintain the system. TR at 27. Debtors must maintain the septic system for obvious sanitation and health reasons. While septic cleaning is specifically included in the Local Standards, Debtors reside in Tarrant County, a largely urban county where most residents have access to sewer service, and do not incur an expense to maintain a septic system. Debtors' situation thus differs from that of the average resident of Tarrant County upon which the Local Standards are based. Debtors have proven the expense is necessary and reasonable and that there is no reasonable alternative to the expense. Debtors may deduct the $140.00 expense to maintain the septic tank.

The $40.00 expense for trash disposal service relates to a special circumstance. Given Debtors' rural location, they must pay significantly more for trash service than in an urban location. TR at 28. Trash collection is specifically provided for in the Local Standards. However, most residents of Tarrant County reside in urban areas where the service is cheaper. Debtors' situation thus differs from that of the typical resident of Tarrant County upon which the Local Standards are based.

The service is clearly necessary for health and sanitation reasons. The Trustee facetiously suggests that Debtors "Burn it. Bury it." This is not a reasonable alternative in the court's view. Debtors have proven a special circumstance. Debtors have proven that the

expense is necessary and reasonable and that there is no reasonable alternative to the expense. Debtors may deduct the $40.00 expense for trash disposal service.

The $100.00 expense for yard maintenance relates to a special circumstance. Debtors argue that the tract on which their home sits is significantly larger than the average lot in Tarrant County and that the cost of maintenance is greater for that reason. Debtors argue that deferring maintenance is unreasonable. The Trustee argues that Debtors should not water or fertilize the lawn and should purchase a grazing animal.

Debtors' home sits on 2.5 acres of land. Tarrant County is largely urban with smaller average lot sizes reflecting that character. The Local Standards provide that housing expenses include the costs of maintenance and repair of a debtor's home, including, presumably, the exterior. However, Debtors' situation differs materially from that of the average homeowner in Tarrant County, upon which the Local Standards are based. Letting the lawn become overgrown is not a reasonable alternative. It would create safety and health concerns. Debtors have proven the yard maintenance expense is reasonable and necessary and that there is no reasonable alternative to the expense. Debtors may deduct the $100.00 expense to maintain the yard.

### III. CONCLUSION

For the foregoing reasons, it is therefore:

**ORDERED** that the Objection is **SUSTAINED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that confirmation of the plan is **DENIED** without prejudice; and it is further

**ORDERED** that Debtors may submit a modified plan consistent with this memorandum opinion.

### # # # END OF MEMORANDUM OPINION AND ORDER # # #